No. 50,123

STATE OF KANSAS, *Appellant,* v. JOHN CUEZZE, DOROTHY HOUSTON, and PATRICK FALTICO, *Appellees.*

(589 P.2d 626)

Opinion filed January 20, 1979.

*Nick A. Tomasic,* district attorney, argued the cause and *Curt T. Schneider,* attorney general, and *Thomas L. Boeding,* assistant district attorney, were with him on the brief for appellant.

*James R. Wyrsch,* of Kansas City, Missouri, argued the cause and *Thomas E. Joyce,* of Kansas City, Kansas, was with him on the brief for appellee Dorothy Houston.

*John C. Humpage,* of Humpage, Berger and Hoffman, of Topeka, argued the cause and *John M. Redmon,* of the same firm, was with him on the brief for appellee John Cuezze.

*Terry Moore,* of Wichita, argued the cause and was on the brief for appellee Patrick Faltico.

The opinion of the court was delivered by

HOLMES, J.: This is a direct appeal by the State pursuant to K.S.A. 1978 Supp. 22-3602(*b*)(1) from an order of the district court dismissing all three counts in a criminal information in case number 77CR0769 against John Cuezze and Dorothy Houston for failure to grant the defendants a speedy trial, and dismissing the third count of the information against Patrick Faltico, a codefendant, on the ground that venue did not lie in Wyandotte County. Counts I and II of the information are still pending against Faltico.

On February 2, 1977, charges were filed against Cuezze, Houston and R. C. Ambler, in case number 77CR0144, charging all three defendants with two counts of making a false writing (K.S.A. 21-3711) and two counts of conspiracy (K.S.A. 21-3711

and 21-3302). Patrick Faltico was named in the original information as a coconspirator but was not charged. The preliminary hearing for Cuezze and Houston was held April 6th and 7th, and on April 22, 1977, both defendants were bound over for trial. The third defendant, Ambler, was granted immunity in exchange for his testimony at the preliminary hearing and charges against him were dismissed. Houston was arraigned May 20, 1977, and Cuezze on June 13, 1977. It is the State's position that at the time of filing the original information, there was not enough evidence to include Faltico as a defendant. In the latter part of May, 1977, an inquisition was held which resulted in additional evidence against Faltico. Over three months later, on September 2, 1977, the district attorney filed a new case, number 77CR0769, against Cuezze, Houston and Faltico. The new case was a three count information charging all three defendants with one count of conspiracy and two counts of making a false writing. The charges against Cuezze and Houston in the second case were essentially the same as in the first information except one count of conspiracy was dropped. On September 20, 1977, the charges pending against Cuezze and Houston, in case number 77CR0144, were dismissed.

A preliminary hearing on the charges in the second case was held November 7 to 10, 1977. On December 9, 1977, the defendants were bound over for trial on all three counts. Houston and Faltico were arraigned on January 19, 1978, and Cuezze on January 20, 1978. A pretrial conference was held February 16, 1978, and numerous pretrial motions were filed by each of the defendants. After hearing various motions, the court, on May 18, 1978, dismissed all three counts of the information against the defendants Cuezze and Houston and dismissed Count III against Faltico.

Count I of the second information charged all three defendants with conspiracy to make a false writing. Count II charged the defendants with making a false writing in an application for a Kansas City, Kansas, city license and Count III charged the defendants with making a false writing in a Kansas state sales tax registration application.

We will first consider the dismissal of the charges against Cuezze and Houston. Among the various motions filed by these defendants was one for a dismissal on the grounds that defend-

ants Cuezze and Houston had been denied their right to a speedy trial as required by K.S.A. 1978 Supp. 22-3402 and the Sixth Amendment to the United States Constitution. The defendants were free on bond at all stages of the proceedings in both cases.

K.S.A. 1978 Supp. 22-3402(2) provides in part:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant '. . . .'"

Three hundred thirty-nine days elapsed from the time of the arraignment of defendant Cuezze in the first case on June 13, 1977, to May 18, 1978, the date of the trial court's memorandum opinion dismissing the charges. Three hundred sixty-three days elapsed from the time of the first arraignment of Houston on May 20, 1977. The learned trial judge, in his written findings, conclusions and opinion, stated in part:

"It is clear that the right to a speedy trial is a fundamental right guaranteed to an accused. But it is also generally recognized that it is a relative right, consistent with reasonable delays, and that the right depends upon the circumstances of each case, and where the totality of the circumstances of the delay is violative of defendant's right to a speedy trial, the defendant is entitled to be discharged.

"It is generally held that delay reasonably chargeable to the defendant is not to be computed in determining whether he has been denied a speedy trial. Conversely, delay reasonably chargeable to the State should be included. Nor is time the only factor to be considered.

"In this case, it is not disputed that insofar as defendants Cuezze and Houston are concerned, identical charges were filed against them in both cases. The same charges have been pending against these defendants, without interruption, since February 2, 1977, almost 16 months. No reason is given for dismissing the first case and refiling a new information except perhaps to include Faltico as a charged co-conspirator. The record does not indicate that the delay was caused by the State to hamper the defendants or for any questionable purpose. However, the time elapsed between the date of defendant Cuezze's arraignment in the first case on June 13, 1977, and the present time (May 18, 1978) amounts to 339 days. The elapsed time between defendant Houston's arraignment in the first case on May 20, 1977, and the present time (May 18) amounts to 363 days. Defendant Cuezze admits to 52 days delay by agreement. Even so, the balance rather substantially exceeds the 180 days limitation the legislature has established for bringing a defendant to trial, none of which has been caused directly or indirectly by the defendants.

"During this time, the defendants have been subjected to considerable anxiety and concern. They have been subjected to two preliminary hearings and a significant increase in attorney fees. There has been no demonstration of prejudice to defendant's defense, but none is required (*Moore vs Arizona*, 414 U.S. 25). In

my opinion, under the circumstances here, defendants Cuezze and Houston have been denied a speedy trial, and the charges against them should be dismissed."

It is the position of the State that there was no violation of K.S.A. 1978 Supp. 22-3402 in that case number 77CR0144 was dismissed before 180 days had expired from the date of arraignment, that the delay in that case cannot be added to the time in case number 77CR0769 and that 180 days from arraignment in the second case had not expired when the trial court entered its decision on May 18, 1978. In support of its position, the State relies heavily on *State v. Fink,* 217 Kan. 671, 538 P.2d 1390 (1975).

In *Fink* the original charges were filed on April 10, 1973, and were subsequently dismissed on November 27, 1973, because the defendant had not been afforded a preliminary hearing within the time provided by statute (K.S.A. 22-2902). The State refiled the same charges on November 30, 1973, the defendant was arraigned and the court again dismissed the case on June 5, 1974, due to the totality of the delay and the invasion of the defendant's constitutional right to a speedy trial. On appeal by the State, this court stated:

"The dismissal or *nolle prosequi* of a criminal charge entered prior to the arraignment and trial of an accused is not a bar to a subsequent prosecution for the same offense. (*Kenreck v. State,* 198 Kan. 21, 24, 422 P.2d 894 and authorities cited.) The same is true where a charge has been dismissed against a prisoner prior to the expiration of the time limitation, and a second information is filed. The time elapsing between the filing of the first information and the dismissal of the cause by the court is not to be counted in determining the time elapsed between the filing of the second information and trial. (*State v. Rowland,* 172 Kan. 224, 239 P.2d 949, 30 A.L.R.2d 455; *People v. Nelson,* 228 Cal. App. 2d 135, 39 Cal. Rptr. 238 [1964]; *State v. Rolax,* 3 Wn. App. 653, 479 P.2d 158 [1970]; and *Montgomery v. State,* 4 Md. App. 473, 243 A.2d 620 [1968], *cert. denied,* 395 U.S. 948, 23 L.Ed.2d 466, 89 S.Ct. 2027 [1969]. See Annot., 50 A.L.R.2d 943.) The charge is no longer pending against a prisoner, and therefore another indictment or complaint can be filed against him. (22A C.J.S., Criminal Law, § 468[d], p. 36.)" (p. 675)

The case at bar is clearly distinguishable from *Fink.* Here identical charges were filed against defendants in the second case at a time when the first case was still pending and as a result the defendants remained charged continuously for far in excess of 180 days from their initial arraignments and for nearly 16 months from the initial filing of the charges on February 2, 1977. The State argues that having secured additional information, through the inquisition held in May, 1977, about Faltico's participation in

the alleged crimes, it was justified in filing the second case to charge Faltico along with Cuezze and Houston. It is to be noted, however, that over three months elapsed from the time of the inquisition to the time of filing case number 77CR0769. The State attempts to justify the delay because of the complexity of the charges and also asserts that much of the delay was occasioned by actions of the defendants themselves. Delays which are the result of the application or the fault of the defendant are not to be counted in computing the statutory period. *State v. Warren,* 224 Kan. 454, 456, 580 P.2d 1336 (1978) and cases cited therein. However, it appears from the trial court's memorandum decision that such delays were considered by the court in its determination and the record on appeal does not bear out that the excessive delay was caused solely by actions of the defendants. As stated by the trial court:

"There is a long line of Kansas cases holding that the dismissal of a criminal charge entered prior to the arraignment and trial of an accused is not a bar to a subsequent prosecution for the same offense, and that the time elapsing between the filing of the first information and dismissal of the cause is not to be counted in determining the time elapsed between the filing of the second information and trial *(State vs. Fink,* 217 Kan. 671). Most of these cases, however, deal with different factual situations or issues than those involved here, as for example where the delay was directly or indirectly caused by the defendant or his counsel, or a conviction was reversed on appeal."

As we said in *Warren,* the purpose of K.S.A. 22-3402 is to implement and define the constitutional guarantee of a speedy trial and the statute establishes certain maximum time limits within which a defendant must be brought to trial. Absent a showing of necessity, the State cannot dismiss a criminal action and then refile the identical charges against the same defendant and avoid the time limitations mandated by the statute. As pointed out by the trial court, our prior cases relied upon by the State arose out of different factual situations or issues than those now before the court. It should also be noted that no attempt was made by the State to secure additional time in the first case to develop evidence as contemplated by K.S.A. 1978 Supp. 22-3402(3)(*c*).

In addition to the statutory provisions, the defendants rely on the constitutional guarantees of the Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Kansas Constitution. In *State v. Otero,* 210 Kan. 530, 502 P.2d 763 (1972), we stated:

"The concept of a speedy trial is threaded throughout this nation's entire history. It has been given expression not only in the Sixth Amendment to the Constitution of the United States, but in § 10 of the Bill of Rights of the Kansas Constitution, as well. No constitutional precept is more inviolable, no right of an accused more precious, than that one who is accused of crime be tried promptly and with due dispatch." (p. 531)

In *Otero* this court adopted the "balancing test" first enunciated in *Barker v. Wingo,* 407 U.S. 514, 33 L.Ed.2d 101, 92 S.Ct. 2182 (1972). We do not deem it necessary to review the decision in *Barker* as that has been adequately done in the *Otero* opinion. Based upon the record in this case we find no error in the trial court's finding that defendants Cuezze and Houston were denied their right to a speedy trial. As a result, it is not necessary to consider further points raised by said defendants.

We now turn to the State's appeal of the dismissal of Count III of the information as to defendant Faltico. As Faltico was not a party to the initial action filed as number 77CR0144, the speedy trial issue has no application to him. The information charged a violation of K.S.A. 21-3711 in the making of a false writing which was filed in Shawnee County as a Kansas state sales tax registration application. In dismissing Count III of the information, the trial court found that the application for state sales tax registration was required to be filed in Topeka, was executed in Topeka by defendant Houston and was hand delivered by Houston to the Department of Revenue in Topeka. The court was of the opinion that it was immaterial that certain entries on the application may have been made in Wyandotte County and that "[t]he place where the alleged criminal act occurred was in Shawnee County where the application was executed and delivered with the intent to induce official action." The court therefore dismissed Count III, holding that the only proper venue for the action was in Shawnee County. We disagree.

The State contends venue of Count III lay in either Wyandotte or Shawnee County under K.S.A. 22-2603, which provides:

"Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur."

The crime of making a false writing is set forth in K.S.A. 21-3711 as follows:

"Making a false writing is making or drawing or causing to be made or drawn any written instrument or entry in a book of account with knowledge that such writing falsely states or represents some material matter or is not what it purports to be, and with intent to defraud or induce official action.

"Making a false writing is a class D felony."

The State alleges, and the record supports, that portions of the application were prepared outside Shawnee County, presumably in Wyandotte County. The application was signed and filed by defendant Houston in Shawnee County. Defendant Faltico contends that as the application must be filed in Shawnee County, venue lies exclusively in that county. In support of his position, he relies upon *State v. Snell,* 131 Kan. 370, 291 Pac. 737 (1930), *Travis v. United States,* 364 U.S. 631, 5 L.Ed.2d 340, 81 S.Ct. 358 (1961), and *United States v. Lombardo,* 241 U.S. 73, 36 S.Ct. 508 (1916). These cases are not in point. In *Snell* the defendants were residents of Cheyenne County where they were engaged as dealers in gasoline and other motor vehicle fuels. The defendants were charged with the failure to pay the tax on motor vehicle fuel in violation of the statute. The tax was required to be paid in Topeka and this court found that the venue for the *failure to pay the tax* properly was in Shawnee County rather than Cheyenne County where the defendants were engaged in business.

In *Travis* the defendant was charged with filing a false non-communist affidavit which the statute required be filed in Washington, D.C. *Lombardo* involved a prosecution for failure to file a required statement with the Commissioner General of Immigration in Washington, D.C. In both of these cases the United States Supreme Court found that as the violation was filing or the failure to file the document in question, the violation occurred, and venue lay, at the place where the filing was required to be made. In the case at bar the statutes do require that state sales tax registration applications shall be filed at Topeka, in Shawnee County. However, Faltico is not charged with failure to file the application or even with filing a false application. Under our statute the offense consists in part of the "making or drawing or causing to be made or drawn" a false instrument.

In *State v. Mason,* 61 Kan. 102, 58 Pac. 978 (1899), defendant Mason was charged with making false statements and reports to the state bank commissioner in respect to the financial condition of the First State Bank of Marion. Mason was convicted in Marion County and on appeal asserted there was no venue in

Marion County as the reports were required to be filed with the bank commissioner in Topeka. This court stated at page 109:

"The next contention is that the offense attempted to be charged in the third count of the information was shown to have been committed in Shawnee county, and of which there could be no conviction in Marion county. The charge is that in Marion county he did subscribe to and make.a certain written report and written statement of the financial condition of the bank to the bank commissioner, and setting forth wherein it was false. Under section 14 of the act, it is provided that every officer, director, agent or clerk of a bank doing business in Kansas 'who wilfully and knowingly subscribes to or makes any false report or false statement or entry in the books of such bank, or knowingly subscribes or exhibits any false writing or paper, with the intent to deceive any person as to the condition of such bank, shall be punished,' etc. The defendant subscribed to and made the statement and report in Marion county, and then transmitted it to the bank commissioner, whose office is held in Topeka, Shawnee county. The principal steps in the transaction were taken in Marion county; the statement and report were prepared there; it was subscribed and sworn to in Marion county, and before a notary public of that county; but of course it was forwarded to and received by the bank commissioner in another county. It, therefore, may be said that the offense has been committed partly in each of the counties named, and, under the provisions of section 23 of the criminal code (Gen. Stat. 1897, ch. 102, § 23; Gen. Stat. 1899, § 5271), the jurisdiction is in either county."

See also *In re Myers,* 119 Kan. 270, 237 Pac. 1026 (1925).

As it is the making of, or causing to be made a false writing and not the filing or failure to file which is the violation charged and assuming the alleged false application was partially prepared in Wyandotte County and completed and filed in Shawnee County, the venue of the charges would lie in either county and the trial court was in error in dismissing Count III of the information as to defendant Faltico.

The defendants in their motions had asked the dismissal of Count I, the conspiracy count, on the grounds it constituted a violation of the ex post facto provisions of the Constitution. While no appeal was taken by the State from the trial court's ruling, Faltico attempts to argue in his brief that Count I has been dismissed. The allegations in the information were to the effect that the defendants had conspired between the years 1967 and 1977. Our conspiracy statute did not become effective until July 1, 1970. The trial court ruled:

"The defendants have moved to dismiss Count I charging conspiracy on the grounds that it violates the ex post facto clause of the United States Constitution. The basis for the motion is that the information charges a conspiracy dating back to 1967 and that the State of Kansas had no general conspiracy statute prior to July 1, 1970.

"It is generally held that the gist of a conspiracy is the agreement to do an unlawful act. Obviously, the State cannot prosecute for a conspiracy agreement made in 1967 unless it can prove that the agreement was a continuing agreement or was reaffirmed in some manner subsequent to July 1, 1970. In other words, the burden of proof is upon the State to show that the essential elements of the conspiracy charged in the information occurred after July 1, 1970. However, relevant evidence tending to prove the essential elements of the crime charged would be admissible, in my opinion, even though such evidence concerned acts or transactions occurring prior to July 1, 1970.

"Defendant's motion to dismiss will, therefore, be sustained insofar as it alleges a conspiracy prior to July 1, 1970."

We find no error in the trial court's ruling on this point.

One other matter remains which must be considered by the court. At the time the State brought its appeal to this court, the district attorney had refused to furnish a transcript of the preliminary hearings of the defendants. It was the State's position that the appeal involved purely questions of law which did not require a transcript of the evidentiary proceedings. Defendants Houston and Faltico insisted that a full transcript was required in order for them to properly prepare their defense to the appeal. After numerous motions before this court, the parties were ordered to agree upon which portions of the record were required and if agreement could not be reached, the State was directed to order a complete transcript of the preliminary hearings. This court reserved the question of assessing the costs of the transcript until a final determination of the appeal. Evidently the parties could not agree and an entire transcript consisting of 688 pages was prepared at a cost of $1,211.00 and furnished to the defendants Houston and Faltico. Defendant Cuezze did not request a transcript and was able to prepare an adequate defense to the appeal without it. While defendants Houston and Faltico each referred to the transcript on occasion in their briefs, it is obvious that the major portion of the transcript was unnecessary and much of it could have been avoided if the parties had stipulated as to the portions actually necessary as contemplated by our Rule No. 3.03 (223 Kan. xxxiv-xxxv). Under the circumstances, the costs of the transcript are assessed one-half to appellant and one-half to appellees Houston and Faltico.

The judgment of the trial court dismissing the charges in the information as to defendants Cuezze and Houston is affirmed; the judgment dismissing count III of the information as to defendant

Faltico is reversed and the costs of the transcript are assessed one-half to appellant and one-half to defendants Houston and Faltico.

MILLER, J., dissenting: I disagree with the dismissal as to defendants Cuezze and Houston, and therefore respectfully dissent.

This is not a case in which the prosecution has dismissed and refiled charges solely to thwart the running of the 180-day period fixed by K.S.A. 1978 Supp. 22-3402(2). I agree that such conduct should not be permitted, else pending charges could be maintained *ad infinitum.*

Houston and Cuezze were arraigned on May 20 and June 13, 1977, respectively. Many motions, filed by the defendants, were argued. Meanwhile the prosecutor diligently pursued the investigation, held an inquisition, and moved to require the defendants to provide handwriting exemplars. The defense motions and the State's motion for exemplars were ruled upon by the trial court on July 19. Promptly thereafter the State determined that one charge against Houston and Cuezze should be dropped, and that Faltico should be joined as a defendant. The joinder would avoid separate lengthy and expensive trials.

The machinery employed to accomplish this purpose was that of dismissal of the first case and the commencement of a new one. The trial court found that no actual prejudice to the defense was demonstrated, and that the delay (resulting from the dismissal and the new filing) was not caused by the State to hamper the defendants or for any questionable purpose.

The prosecution acted reasonably and in good faith in this unusual and difficult case. Under the circumstances, I do not believe the ends of justice are served by tying the two cases together and summarily determining that the allowable 180-day period has been exceeded. Even if the cases are tied together for the purpose of computing the time, the 180-day period has not expired. It was 97 days from Cuezze's arraignment in the first case until dismissal, 120 days for Houston. From the date of arraignment on the new information on January 19, 1978, for Houston, and January 20 for Cuezze, it was only 27 or 28 days until February 16, when the State announced ready for trial. Defendants are responsible for the delay of trial after that date. Certainly the charges could not have been tried between the time the first

case was dismissed and the defendants were arraigned in the present proceeding, yet the majority and the trial judge apparently include that entire period in their computation.

I would reverse the trial court's order dismissing the charges as to defendants Houston and Cuezze.

McFARLAND, J., joins in above dissent.