No. 92,968

STATE OF KANSAS, *Appellee*, v. WILBUR R. McELROY, *Appellant*.

(130 P.3d 100)

Opinion filed March 17, 2006.

*Nathan B. Webb*, assistant appellate defender, argued the cause and was on the brief for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

Davis, J: Wilbur McElroy appeals his registration of offender violation conviction under K.S.A. 2002 Supp. 22-4903 and K.S.A. 2002 Supp. 22-4904, contending he was tried in an improper venue and the complaint and jury instruction omitted an essential element of the offense. We transferred this case on our own motion pursuant to K.S.A. 20-3018(c). We agree and reverse the conviction.

Defendant, Wilbur McElroy, was convicted of attempted rape in 1999. Upon his release on parole in February 2003, the defendant established a temporary residence at a halfway house in Sedgwick County, Kansas. In compliance with the Kansas Offender Registration Act (KORA), K.S.A. 2005 Supp. 21-4901, *et seq.*, he completed the appropriate Kansas Offender Registration Form, listing his address as 3820 Toben, Wichita, Kansas. This form was sent to the Kansas Bureau of Investigation (KBI) in Topeka, Kansas, and a copy was sent to the Sedgwick County Sheriff's Office.

Upon completion of his treatment program at the halfway house, the defendant was assigned to parole officer Danny McKenzie. At their first meeting on March 4, 2003, the defendant reported to McKenzie that he was now living at 1642 N. Poplar. During their next three meetings, on March 6, March 18, and April 1, 2003, the defendant maintained that his residence was still located on North Poplar. The defendant failed to show up for any more scheduled meetings, and McKenzie issued a warrant for the defendant's arrest on April 17, 2003, for absconding from parole. The defendant was apprehended in California in October 2003.

On November 4, 2003, the defendant was charged in Sedgwick County, with an offender registration violation pursuant to K.S.A. 2002 Supp. 22-4904(b)(1) and K.S.A. 2002 Supp. 22-4903 based on his failure to inform the Sedgwick County Sheriff's Department of his change of address on or about June 5, 2003. Following a jury trial, the defendant was found guilty and was sentenced to 9 months' imprisonment, consecutive to his remaining postrelease time in the 1999 case.

### Complaint/Jury Instruction

On appeal, the defendant argues the district court's failure to

properly instruct the jury on the essential elements of a registration of offender violation under K.S.A. 2002 Supp. 22-4904(b)(1) was clearly erroneous because the instruction did not charge a crime by requiring the jury to find that the defendant failed to report a change of address to the sheriff, rather than the KBI, as provided under K.S.A. 2002 Supp. 22-4904(b)(1).

The State counters that defendant mischaracterizes the argument. The State contends the appropriate inquiry is whether the language set forth in the complaint, after which the instruction was modeled, was sufficient to confer jurisdiction and charge the defendant with a crime. It contends the charging document and the instructions in this case concerning notification to the sheriff were sufficient because the legislative intent of KORA was to ensure that both the law enforcement agency where the defendant was last registered and the KBI are notified within 10 days of the change of address.

Our resolution of this issue is accomplished by first reviewing the relevant statutory procedure under the KORA. K.S.A. 2002 Supp. 22-4905(a)(1) requires that any offender who is paroled from prison be informed by the staff of the facility of the duty to register as provided in the KORA. Of note to this case, these duties include:

"(iii) inform the offender that the offender must give written notice of any change of address within 10 days of a change in residence *to the law enforcement agency where last registered and the Kansas bureau of investigation*;

"(iv) inform the offender that if the offender changes residence to another state, *the offender must inform the law enforcement agency where last registered and the Kansas bureau of investigation* of such change in residence and must register in the new state within 10 days of such change in residence." (Emphasis added.) K.S.A. 2002 Supp. 22-4905(a)(2)(A)(iii) and (iv).

See also K.S.A. 2002 Supp. 22-4904(a)(5)(C); K.S.A. 2002 Supp. 22-4905(b)(2)(A)(iii) and (iv) (imposing duties on sheriff and court to inform the offender of these identical requirements under different situations).

These requirements are printed on the registration form which the offender must read and sign. K.S.A. 2002 Supp. 22-4905(a)(2)(A)(vi). The form is sent to the KBI, which forwards it on to the law enforcement agency where the offender is expected

to reside. K.S.A. 2002 Supp. 22-4905(a)(2)(B). The offender must verify with the sheriff of the new county that the sheriff has received such offender's information and registration form within 10 days of coming into any county in which he or she resides or temporarily resides for more than 10 days. K.S.A. 2002 Supp. 22-4904(a)(2).

Although the offender is instructed that he or she must register with both the law enforcement agency and the KBI upon a change of address, K.S.A. 2002 Supp. 22-4904(b)(1) provides: "If any person required to register as provided in this act changes the address of the person's residence, the offender, within 10 days, shall inform in writing *the Kansas bureau of investigation* of the new address." (Emphasis added.) "After receipt of the change of address, the Kansas bureau of investigation shall forward this information to the law enforcement agency having jurisdiction of the new place of residence within 10 days of such receipt of the change of address." K.S.A. 2002 Supp. 22-4904(b)(2).

K.S.A. 2002 Supp. 22-4903 provides: "Any person who is required to register as provided in this act who violates any of the provisions of this act is guilty of a severity level 10, nonperson felony."

The information in this case charged the defendant with failing

"to inform in writing, the law enforcement agency, to-wit: Sedgwick County Sheriff's Department, Wichita, Sedgwick County, Kansas, where said WILBUR R. McELROY was last registered, of any change of address within ten (10) days of said change of address; contrary to Kansas Statutes Annotated 22-4904(b)(1) and 22-4903, Registration of Offender Violation, Severity Level 10, Non-Person Felony."

Similarly, the jury instruction tracked the language of the information:

"The defendant, Wilbur R. McElroy is charged with the crime of Registration of Offender Violation. Mr. McElroy pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That Mr. McElroy was convicted of a crime which required that he register in writing with the Sheriff's Department of his county of residence within 15 days of having established either a temporary or permanent residence in that county and, thereafter, to register in writing within 10 days of any change of his residential address;

"2.  That Mr. McElroy failed to notify in writing the Sheriff of Sedgwick County within 10 days of a change of his residential address; and

"3.  That this act occurred on or about the 5th day of June, 2003, in Sedgwick County, Kansas."

Apparently the State relied upon the 1996 version of K.S.A. 22-4904 in charging the defendant with a registration of offender violation and in drafting the jury instructions. This is evidenced by the fact that this earlier version of the statute granted the offender 15 days, rather than 10 days, to register with the local sheriff at the new address, and subsection (b)(1) required that the offender also inform "the law enforcement agency where last registered of the new address" within 10 days of a change of address. See K.S.A. 1999 Supp. 22-4904(a)(2); K.S.A. 1996 Supp. 22-4904. In 1997, the legislature amended subsection (b)(1) to require that the offender's notice go instead to the KBI, the requirement found in the current statute applicable to this case. See K.S.A. 2002 Supp. 22-4904(b)(1); K.S.A. 1997 Supp. 22-4904(b)(1).

Although the defendant frames the issue as a jury instruction violation, the State is correct that he is also really challenging the sufficiency of the complaint to charge a crime. The sufficiency of a charging document to confer jurisdiction is a question of law over which an appellate court has unlimited review. *State v. Hooker*, 271 Kan. 52, 60, 21 P.3d 964 (2001). As this issue is being raised for the first time on appeal, the post-*State v. Hall*, 246 Kan. 728, 764-65, 793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003), standard of review applies:

"The post-*Hall* standard applies a common-sense interpretation of complaints and informations and requires this court to look at whether the claimed defect in the information has prejudiced the defendant in the preparation of his or her defense, impaired the defendant's ability to plead the conviction in any subsequent prosecution, or limited the defendant's substantial rights to a fair trial." *State v. Martis*, 277 Kan. 267, 275, 83 P.3d 1216 (2004).

"The orderly resolution of criminal law issues requires timely raising of claims relating to the validity of an information. Tardily challenged informations are to be construed liberally in favor of validity. The validity of an information is to be tested by reading the information as a whole. The elements of the offense may be gleaned from the information as a whole. An information not challenged before

verdict or finding of guilty or pursuant to K.S.A. 22-3502 by a motion for arrest of judgment will be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted. [Citation omitted.]"*Hall*, 246 Kan. at 764.

As neither the complaint nor the jury instructions provide that the defendant failed to give proper notification to the KBI, the crux of the issue in this case is whether the failure to report a change of address to the sheriff's office was a chargeable registration violation offense under K.S.A. 2002 Supp. 22-4904(b)(1). To the extent this requires statutory interpretation of the KORA, the following canons are helpful:

"The fundamental rule of statutory construction, to which all other rules are subordinate, is that the intent of the legislature governs."

"An appellate court may consider various aspects of a statute in attempting to determine the legislative intent. The court must first look at the intent as expressed in the language of the statute. When the language is plain and unambiguous, an appellate court is bound to implement the expressed intent. Ordinary words are to be given their ordinary meanings without adding something that is not readily found in the statute or eliminating that which is readily found therein."

"An appellate court must consider all of the provisions of a statute *in pari materia* rather than in isolation, and these provisions must be reconciled, if possible, to make them consistent and harmonious. As a general rule, statutes should be interpreted to avoid unreasonable results." *State v. Manbeck*, 277 Kan. 224, Syl. ¶ ¶ 2, 3, 4, 83 P.3d 190 (2004).

The plain and unambiguous language of K.S.A. 2002 Supp. 22-4904(b)(1), the provision under which the defendant was charged in this case, only requires that the offender provide written notice to the KBI of a change of address. However, the fact that the statutory framework of the KORA, including another provision of the same statute, K.S.A. 2002 Supp. 22-4904(a)(5)(C), requires that the defendant be advised that he or she must report a change of address to both the law enforcement agency where last registered and the KBI, creates some ambiguity as to legislative intent. When viewing these provisions as a whole, we question whether it is a reasonable result that the failure to notify the KBI is a registration violation while the failure to notify the law enforcement agency of the last county of residence is not.

However, this must be weighed against the fact that the legislature specifically amended K.S.A. 1996 Supp. 22-4904(b)(1) and (2), which required that notification be given *to the law enforcement agency where the offender was last registered,* which would in turn pass on the information to the KBI and the law enforcement agency with jurisdiction over the new residence, to the current provision, which requires that notification be given by the offender *to the KBI,* which would then pass on the information to the law enforcement agency in the new county of residence. See K.S.A. 2002 Supp. 22-4904(b)(1) and (2).

If K.S.A. 2002 Supp. 22-4904(b)(1) is interpreted so that a registration violation exists for failing to notify the law enforcement agency where the offender was last registered, a provision specifically deleted by the legislature in 1997, then it would run contrary to the rule of statutory construction which states: "When the legislature revises an existing law, it is presumed that the legislature intended to change the law from how it existed prior to the amendment, and it is presumed that the legislature does not intend to enact useless or meaningless legislation." *State v. Van Hoet,* 277 Kan. 815, 826, 89 P.3d 606 (2004).

In viewing this change to the statute, we also recognize the legislative purpose of the KORA, *i.e.,* to protect the public from sex offenders as a class of criminals who are likely to reoffend and to provide public access to the registration information required when an offender falls within the provisions of the KORA. See *State v. Wilkinson,* 269 Kan. 603, 609, 9 P.3d 1 (2000); *State v. Stevens,* 26 Kan. App. 2d 606, 609, 992 P.2d 1244 (1999), *rev. denied* 268 Kan. 895 (2000). The amendment of the statute demonstrated a legislative intent that these goals would be best served by informing the KBI, "the central repository in Kansas for offender registration," and the law enforcement agency where the offender is moving, *i.e.,* where the offender would pose the threat. The purpose of notification to the law enforcement agency where the offender last registered, under the 1996 version of the statute, appeared to be simply an additional step in the process which reached the same result, as the law enforcement agency where the offender last registered

was required to inform the KBI and the new law enforcement agency of the change of address.

Our examination of these statutory amendments, the plain language of K.S.A. 2002 Supp. 22-4904(b)(1), and the policy behind the KORA leads us to conclude that the legislature did not intend to make the failure to notify the law enforcement agency in the county the offender was moving from a registration violation, notwithstanding the other seemingly conflicting provisions of the KORA. Thus, even under our liberal post-*Hall* standard, the State failed to charge the defendant with a registration of offender offense by charging that the defendant failed to notify the Sedgwick County Sheriff's Office when he moved to California, rather than the KBI as required under K.S.A. 2002 Supp. 22-4904(b)(1).

### *Venue/Jurisdiction*

The defendant also argues for the first time on appeal that Sedgwick County was not the proper venue for his trial. He reasons that the failure to file a written notification of change of address created a criminal cause of action in the county where the documentation was required to be filed, *i.e.,* Shawnee County, and no acts requisite to the commission of the crime occurred in Sedgwick County under K.S.A. 22-2603 ("Where two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur."). The State counters that jurisdiction was appropriate in Sedgwick County under K.S.A. 22-2603 based on the defendant's departure from his residence in Wichita.

We note that the defendant's failure to object to venue at trial is irrelevant because venue is a matter of jurisdiction. Lack of jurisdiction is not a waivable defense and may be raised for the first time on appeal. See *State v. Boorigie*, 273 Kan. 18, 23, 41 P.3d 764 (2002); *State v. Redford*, 242 Kan. 658, 672, 750 P.2d 1013 (1988). Although venue is a question of fact to be determined by the jury, the existence of jurisdiction is a question of law over which this court's scope of review is unlimited. *State v. Stough*, 273 Kan. 113, 116, 41 P.3d 281 (2002); *Redford*, 242 Kan. at 672. To the extent this case requires statutory interpretation, such interpretation also

raises issues of law subject to de novo review on appeal. *State v. Schroeder*, 279 Kan. 104, 108, 105 P.3d 1237 (2005).

The defendant contends that the failure to notify the KBI of a change of address within 10 days in violation of K.S.A. 2002 Supp. 22-4904(b)(1) consists of two different elements: (1) a change of address; and (2) a failure to notify the KBI of the new address. He argues that neither of these acts occurred in Sedgwick County in this case, as he established a new residence in California and failed to file the required notice of change of address with the KBI in Shawnee County. The State does not dispute that the notification should have been filed in Shawnee County; however, it argues that the change of address, or relocation, contemplates a departure from the former residence, *i.e.*, Wichita, as well as an arrival at the new address in California. As such, it contends prosecution was appropriate in Sedgwick County.

Addressing the second element first, the defendant argues that Sedgwick County was not the proper venue for his prosecution because he was required to file a written notification with the KBI in Shawnee County. He relies primarily upon *Travis v. United States*, 364 U.S. 631, 636, 5 L. Ed. 2d 340, 81 S. Ct. 358 (1961), and *State v. Snell*, 131 Kan. 370, 291 Pac. 737 (1930), in support of his argument.

In *Travis*, the defendant was charged in Colorado with the making and filing of false affidavits which he prepared in Colorado and filed in Washington, D.C. In a challenge to venue on appeal, the Court rejected the government's argument that the offense had its beginning in Colorado, noting there would be no offense unless the defendant completed the filing in Washington, D.C. The Court cited with approval *United States v. Lombardo*, 241 U.S. 73, 60 L. Ed. 897, 36 S. Ct. 508 (1916), which involved a prosecution for failure to file a required statement in Washington, D.C., for the proposition that "[w]hen a place is explicitly designated where a paper must be filed, a prosecution for failure to file lies only at that place. [Citation omitted.]" 364 U.S. at 636.

In *Snell*, the defendants were residents of Cheyenne County, where they were engaged as dealers in gasoline and other motor vehicle fuels. The defendants were charged with failure to pay the

tax on motor vehicle fuel. As the tax was required to be paid in Topeka, this court found that the venue for the failure to pay the tax properly was in Shawnee County rather than Cheyenne County, where the defendants were engaged in business. 131 Kan. at 371-72.

However, both the Kansas Supreme Court and the Tenth Circuit have distinguished these cases where the offense involved the making of the document rather than, or in addition to, the filing. See *State v. Cuezze, Huston & Faltico*, 225 Kan. 274, 280, 589 P.2d 626, *modified by* 225 Kan. 468, 595 P.2d 723 (1979) (distinguishing *Travis, Lombardo,* and *Snell* in finding venue for the making of a false writing, a Kansas state sales tax registration application, which was filed in Shawnee County, was proper in both Wyandotte County where the application was made and Shawnee County where it was filed under K.S.A. 22-2603); *United States v. Bettenhausen*, 499 F.2d 1223, 1226-27 (10th Cir. 1974) (distinguishing *Travis* and *Lombardo,* both of which involved required filing of an affidavit with a particular government agency, in finding venue was proper in Kansas where false tax returns were made and subscribed even though they were required to be filed in Texas).

In the present case, K.S.A. 2002 Supp. 22-4904(b)(1) requires that the offender notify the KBI in writing of a change of address; however, the statute does not provide a specific KBI location, unlike the facts of *Travis, Lombardo,* and *Snell.* Our own research revealed that the KBI website lists four other Kansas offices, including an office in Wichita.

However, the defendant persuasively argues that he was required to file this written notification with the Topeka office in Shawnee County, and the State does not contest this position. The defendant points out that the KBI is headquartered in Topeka, that the Manager of the KBI Crime Data Information Center, Tonya Tholman, testified that she was in charge of maintaining the files on each individual at the central repository where she worked, and the affidavit she sent out regarding the defendant's failure to file a notice of change of address listed the KBI's address as 1620 S.W. Tyler, Topeka, Kansas. Moreover, the original offender registration form filed by the defendant was required to be mailed to the Shaw-

nee County location as well. As this evidence strongly suggests that the written notification was required to be sent to the Shawnee County location, venue under this element of K.S.A. 2002 Supp. 22-4904(b)(1) would have likewise vested in Shawnee County.

While the State does not contest this fact, it does argue that the change of address, or relocation, contemplates a departure from the former residence, *i.e.*, Wichita, as well as an arrival at the new address in California. The problem with this argument is that the key element, a change of address, happened in California, not Wichita. By way of analogy in *Snell*, the fact that the defendants sold fuel in Cheyenne County was merely a precursor to the essential element of failing to pay the taxes in Shawnee County, although it was the reason the defendants were required to pay the tax. Likewise, in this case, the defendant's departure from Sedgwick County was merely a precursor to the essential element of his establishing a new address in California. Thus, under the facts of this case, Sedgwick County was not an appropriate venue for this case and there was no jurisdiction to try defendant in Sedgwick County.

This conclusion is supported by a review of the statutory provisions discussed above. Upon changing his address, the defendant was required to send written notification of his change of address to the KBI in Topeka, which in turn informs the law enforcement agency having jurisdiction of the new residence. K.S.A. 2002 Supp. 22-4904(b)(1) and (2). Venue, generally, would lie in the county of the defendant's new residence, provided that is within the state, *i.e.*, where the defendant would pose a threat, rather than in the county where the defendant had previously registered but was no longer residing. Venue in this case would also lie in Shawnee County where defendant was required to send his written notification of change of address. For this reason as well as our resolution of the first issue, defendant's conviction is reversed.

Reversed.