NOT DESIGNATED FOR PUBLICATION

No. 113,941

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT M. DENOMME,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed May 27, 2016. Affirmed in part, reversed in part, and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., ARNOLD-BURGER, J., and BURGESS, S.J.

*Per Curiam*:  A jury convicted Robert M. Denomme of identity theft, attempted criminal use of a financial card, and attempted misdemeanor theft. He appeals those convictions arguing: (1) that his convictions must be reversed because the State's complaint was defective; (2) that his convictions must be reversed because they were not supported by sufficient evidence; and (3) that the trial court erred by summarily denying his untimely new trial motion alleging that his trial counsel was ineffective. As detailed below, Denomme's arguments concerning the complaint and the sufficiency of the evidence are unpersuasive. Nevertheless, the trial court erred by summarily denying Denomme's argument that his trial counsel was ineffective for failing to inform the trial

1

court about alleged jury misconduct. Accordingly, this court affirms in part, reverses in part, and remands for an evidentiary hearing.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2014, Denomme was arrested and charged with committing the following: one count of identity theft, a severity level 8 nonperson felony in violation of K.S.A. 2015 Supp. 21-6107(a); one count of criminal use of a financial card, a class A nonperson misdemeanor in violation of K.S.A. 2015 Supp. 21-5828(a)(1); one count of attempted criminal use of a financial card, a class B nonperson misdemeanor in violation of K.S.A. 2015 Supp. 21-5828(a)(1); one count of theft, a class A nonperson misdemeanor in violation of K.S.A. 2015 Supp. 21-5801(a)(1); and one count of attempted theft, a class B nonperson misdemeanor in violation of K.S.A. 2015 Supp. 21-5801(a)(1).

Denomme's jury trial was held on August 8, 2014. At his trial, the State presented evidence Denomme stole Anna Lippe's purse containing Lippe's Cabela's VISA credit card. The State alleged Denomme used Lippe's credit card in three separate transactions. Lippe testified she had lost her purse on July 1, 2013, and immediately reported it missing to Officer Steve Squires. Officer Squires called Lippe into the police station the next day because a man had found her purse in a lot behind a local automotive store. Lippe explained although many items were still inside her purse, her credit card was missing.

Upon reviewing charges made on her credit card account, Lippe saw three unauthorized transactions. Two of the unauthorized charges occurred on July 2, 2013. Both of these charges occurred back to back, and the charges were made at a gas station located in Clay Center, Kansas. The first charge was in the amount of $80.02, the second charge was in the amount of $45.39, and the remaining unauthorized charge occurred on

2

July 3, 2013. Lippe explained somebody attempted to use her credit card to purchase minutes for a Straight Talk wireless cell phone. Because Lippe had already cancelled her credit card the purchase was declined. Lippe stated she told Officer Squires about the unauthorized use of her credit card.

Officer Squires testified after Lippe told him someone had tried to purchase minutes to add onto a cell phone using her credit card, he sought and obtained a subpoena for the name, account number, and phone number associated with the cell phone. TracFone Wireless, Inc., a subsidiary of Straight Talk, complied with the subpoena, revealing that Lippe's credit card was used in an attempt to purchase $50.12 worth of minutes for a cell phone number belonging to Denomme. Officer Squires testified he was familiar with Denomme because he had previously lived in Clay Center. The officer further testified there were no surveillance videos available from the gas station where the first two unauthorized credit card charges were made.

The State additionally submitted a printout of Lippe's credit card statement, the subpoena, and TracFone's response to the subpoena into evidence.

Denomme testified on his own behalf. He admitted the phone number at issue was his but denied any involvement in the theft of Lippe's credit card. Denomme admitted a bank statement into evidence showing he had paid Straight Talk $49.92 on July 5, 2013. Denomme asserted because he paid his Straight Talk bill of $49.92 on July 5, 2013, it made no sense why he would attempt to pay $50.12 on July 3, 2013. Additionally, Denomme testified his cell phone plan had unlimited minutes.

The jury ultimately acquitted Denomme of the criminal use of a financial card and theft counts associated with the use of Lippe's credit card at the gas station on July 2, 2013. The jury found Denomme guilty of the attempted criminal use of a financial card and attempted misdemeanor theft counts associated with the use of Lippe's credit card in

the attempted purchase of cell phone minutes on July 3, 2013. The jury also found Denomme guilty of identity theft.

More than 1 month after his convictions, on September 24, 2014, Denomme filed a pro se motion for new trial. In his motion, Denomme alleged his trial counsel, Phylemon Yau, was ineffective because Yau: (1) failed to effectively communicate with him; (2) failed to call certain witnesses; (3) failed to subpoena other witnesses; and (4) failed to investigate the charges. Denomme was appointed new counsel. Denomme's new counsel filed an amended motion for new trial on January 20, 2015. In this motion, Denomme reiterated his previous arguments but also alleged Yau failed to inform the trial court about inappropriate contact that occurred between Officer Squires and members of the jury during his trial. Denomme's new counsel also moved for judgment of acquittal, alleging insufficient evidence.

The trial court held a hearing on Denomme's motions on January 22, 2015. Denomme and his friend, Margie Jo Clark, both testified they saw Officer Squires speak to members of the jury during a break at his trial. Denomme further testified he saw Yau's investigator, Kimberly Tisdale, speak with the jury during his trial. Denomme testified he did not know what was discussed between the jury and Officer Squires or between the jury and Tisdale, but Denomme explained when he told Yau about this, Yau refused to inform the trial court. Denomme testified Yau told him to "'just keep it simple, I got this under control'" and "'just keep your mouth shut and be quiet and I'll take care of everything.'" After hearing this testimony, the trial court denied both of Denomme's motions. The trial court denied Denomme's motion for judgment of acquittal because sufficient evidence supported his convictions. Citing *State v. Holt*, 298 Kan. 469, 476, 313 P.3d 826 (2013), the trial court denied Denomme's motion for new trial because it was not timely filed and did not allege new evidence.

The trial court sentenced Denomme to a total of 18 months' probation with an underlying prison term of 14 months. Denomme timely appealed.

On August 6, 2015, the trial court granted Denomme's request for early termination of probation.

## WAS DENOMME'S COMPLAINT FATALLY DEFECTIVE?

An appellate court has unlimited review over whether a complaint conferred subject matter jurisdiction. *State v. Rivera*, 48 Kan. App. 2d 417, 451, 291 P.3d 512 (2012). When an appellant attacks the validity of the complaint for the first time on appeal, an appellate court must construe the complaint liberally in favor of validity. *Cf. State v. Gracey*, 288 Kan. 252, 256, 200 P.3d 1275 (2009) (validity of complaint is determined by considering the document in its entirety and elements of the offense may be gleamed from document as a whole). To succeed:

> "A defendant challenging the sufficiency of the charging document for the first time on appeal must show the alleged defect either '(1) prejudiced the defendant's preparation of a defense; (2) impaired the defendant's ability to plead the conviction in any subsequent prosecution; or (3) limited the defendant's substantial rights to a fair trial. [Citation omitted.]'" *State v. Littlejohn*, 298 Kan. 632, 655, 316 P.3d 136 (2014).

On appeal, Denomme argues his complaint was fatally defective because the State failed to allege what overt act he took in furtherance of committing attempted criminal use of a financial card and attempted misdemeanor theft. Denomme argues the defective complaint prejudiced his defense preparation, impaired his ability to plead the conviction, and limited his substantial rights to fair trial.

Here, the charges at issue in the complaint read in relevant part as follows:

"**COUNT 3. – ATTEMPTED CRIMINAL USE OF A FINANCIAL CARD**

"That on or about the 3rd day of July, 2013, the said **ROBERT M. DENOMME**, within Clay County, Kansas, did then and there being, unlawfully, and willfully, attempt to use a financial card without the consent of the cardholder; with the intent to defraud and for the purpose of obtaining money, goods, property, services or communication services, but failed in the perpetration thereof; to wit: attempted to add minutes to his cellular phone in the amount of $50.12 . . .

. . . .

"**COUNT 5. – ATTEMPTED MISDEMEANOR THEFT**

"That on or about the 3rd day of July, 2013, the said **ROBERT M. DENOMME**, within Clay County, Kansas, did then and there being, unlawfully, willfully, and intentionally attempt to obtain and exert unauthorized control over property but failed in the perpetration thereof, to-wit: cell phone minutes worth $50.12, said property being owned by Anna Lippe, done with the intent to deprive the owner permanently of the possession, use or benefit of the owners' property, and the value of said property is less than $1,000.00 . . . "

In his brief, Denomme argues this court should rule the complaint was fatally defective based on *State v. McElroy*, 281 Kan. 256, 262, 130 P.3d 100 (2006), and *State v. Sweat*, 30 Kan. App. 2d 756, 761, 48 P.3d 8 (2002). *McElroy*, however, is inapplicable. *McElroy* involved whether a complaint was deficient because it failed to charge a valid crime when McElroy was charged with failing to report his change of address to the local sheriff under K.S.A. 2002 Supp. 22-4904(b)(1) when K.S.A. 2002 Supp. 22-4904(b)(1) only required him to report his change of address to the Kansas Bureau of Investigation. See 281 Kan. at 259. Thus, *McElroy* has no bearing on the validity of a complaint when charging an attempted crime.

Denomme's reliance on *Sweat* is misplaced. In his brief, Denomme points out that this court reversed Sweat's conspiracy conviction because her complaint merely stated

she willfully agreed with another person to commit first-degree murder without alleging what overt act she took in furtherance of the conspiracy as required under K.S.A. 21-3302(a). See 30 Kan. App. 2d at 761.

Denomme completely ignores the *Sweat* court also held that "[a] complaint charging attempt need not specify the overt act committed toward perpetration of the completed crime." 30 Kan. App. 2d 756, Syl. ¶ 3.

The *Sweat* court reached this holding because unlike the conspiracy statute, the attempt statute does not require the overt act be both alleged and proven. 30 Kan. App. 2d at 761-62. Consequently, the *Sweat* court ruled the complaint, which alleged Sweat took "'an overt act towards the perpetration of the crime of Murder in the First Degree,'" was sufficient in regards to the attempted murder charge. 30 Kan. App. 2d at 759-62. Likewise, this court has concluded that even the words "overt act" are unnecessary for charging purposes so long as defendants know what they are charged with attempting. See *Gayden v. State*, No. 89,487, 2004 WL 375884, at *4-5 (Kan. App. 2004) (unpublished opinion) (holding that *Sweat* controlled even though Count II of Gayden's complaint did not specify an overt act or even mention the words "overt act").

Here, neither the attempted criminal use of a financial card count nor the attempted misdemeanor theft count specifically stated what overt act Denomme took towards completing those crimes. Moreover, neither count mentions the words "overt act." Nevertheless, both counts put Denomme on notice of his charges. Accordingly, despite his assertion to the contrary, Denomme's argument that his complaint is fatally defective fails under our court's holding in *Sweat*. As a result, Denomme's appeal on this issue fails.

WERE DENOMME'S CONVICTIONS SUPPORTED BY SUFFICIENT EVIDENCE?

When reviewing a sufficiency of evidence challenge, an appellate court reviews all the evidence in the light most favorable to the prosecution. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014). If this court determines that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on the evidence presented at trial, then the defendant's convictions will be upheld. 299 Kan. at 525. In making this determination, this court will not reweigh evidence or the credibility of witnesses. 299 Kan. at 525. This court will reverse a defendant's convictions in only the rarest cases where the evidence is so incredible that no reasonable factfinder could find the defendant guilty beyond a reasonable doubt. See *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

On appeal, Denomme argues there was insufficient evidence to support his convictions of identity theft, attempted criminal use of a financial card, and attempted misdemeanor theft because: (1) the State failed to prove the crimes were committed in Clay County, Kansas; (2) the State failed to prove Denomme made any overt acts towards committing the crimes; and (3) no rational factfinder could have found him guilty beyond a reasonable doubt based on the incongruities in the evidence. The State counters that there was sufficient evidence to support each of Denomme's convictions.

Denomme argues that there was insufficient evidence to support his convictions because the State failed to prove that the crimes occurred in Clay County, Kansas. Denomme notes that venue is a jurisdictional fact that must be proved in criminal cases. "Because venue is jurisdictional and implicates the district court's subject matter jurisdiction, our standard of review is de novo." *State v. Kendall*, 300 Kan. 515, 530, 331 P.3d 763 (2014).

The State responds that there was sufficient evidence presented at trial supporting the crimes occurred in Clay Center, Kansas. The State points out that it presented evidence Lippe's purse was lost in Clay Center, Denomme formerly resided in Clay Center, and he continued to visit Clay Center after he moved. The State further points out that Denomme's own exhibit, which was submitted into evidence, shows he purchased an item at a thrift store in Clay Center on July 3, 2013, the date someone attempted to add minutes on Denomme's cell phone with Lippe's credit card.

Given this evidence, there was sufficient evidence supporting that the crimes occurred in Clay Center. A rational factfinder could have taken the evidence that Lippe's purse was lost in Clay Center together with the evidence Denomme was in Clay Center on July 3, 2013, to conclude he attempted to add minutes onto his cell phone while in Clay Center.

While there was no explicit testimony Denomme committed the crimes in Clay County, Kansas, our Supreme Court has held that Kansas "cases do not require that venue be proved by specific questions and answers that the offense occurred in a particular county." *State v. Moore*, 226 Kan. 747, 750, 602 P.2d 1359 (1979). Instead, "[v]enue may be established by other competent evidence showing the offense was committed within the jurisdiction of the particular court." 226 Kan. at 750. This means if the State presented evidence a crime was committed in Wichita, Kansas, the State has successfully submitted sufficient evidence for the jury to conclude the crime was committed in Sedgwick County, Kansas. See 226 Kan. at 750-51.

Denomme also argues there was insufficient evidence to support his conviction of attempted theft and attempted criminal use of a financial card because the State failed to prove he took any overt act in furtherance of committing these crimes as required when proving an attempt.

9

By statute, "[a]n attempt is any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 2015 Supp. 21-5301(a). Theft under K.S.A. 2015 Supp. 21-5801(a)(1) occurs when a person "obtain[s] or exert[s] unauthorized control over property or services" with the "intent to permanently deprive the owner of the possession, use or benefit of the owner's property or services." Criminal use of a financial card under K.S.A. 2015 Supp. 21-5828(a)(1) occurs when a person "us[es] a financial card without the consent of the cardholder" with the "intent to defraud and to obtain money, goods, property or services." Moreover, in explaining what constitutes an overt act, our Supreme Court has held that

> "no definite rule as to what constitutes an overt act for the purposes of attempt can or should be laid down. Each case must depend largely on its particular facts and the inferences which the jury may reasonably draw therefrom. The problem should be approached with a desire to accomplish substantial justice. It has been said that mere preparation is not sufficient. The accused must have taken steps beyond mere preparation by doing something directly moving toward and bringing nearer the crime he intends to commit. It has been said that there must be some appreciable fragment of the crime committed." *State v. Garner*, 237 Kan. 227, 238, 699 P.2d 468 (1985).

Here, the State presented evidence someone tried to add minutes onto a cell phone using Lippe's credit card. Through Officer Squires' testimony, the jury learned the owner of the cell phone was Denomme. Through both Office Squires' and Lippe's testimony, the jury learned the person who attempted to add minutes onto the cell phone failed because Lippe's credit card was declined. Thus, the jury could reasonably infer from this evidence that a person stole Lippe's credit card, decided to add a certain amount of minutes onto the cell phone, provided Straight Talk with Lippe's credit card information, requested to make the purchase, and then had the credit card declined.

10

Although this is not direct evidence Denomme attempted to use Lippe's credit card, it certainly constitutes circumstantial evidence supporting that Denomme attempted to purchase minutes with Lippe's credit card. So long as a factfinder may reasonably infer the existence of the fact at issue all that is necessary to support even the gravest offense is circumstantial evidence. See *State v. Brooks*, 298 Kan. 672, 689, 317 P.3d 54 (2014). More importantly, the inference that Denomme utilized Lippe's credit card information in an attempt to purchase minutes but ultimately had the card declined constitutes evidence of an overt act. The step of actually having the credit card declined is proof that Denomme took steps beyond mere preparation. He attempted to make the purchase. Accordingly, in the light most favorable to the prosecution, there was sufficient evidence to support Denomme took an overt act in furtherance of committing theft and in furtherance of committing criminal use of a financial card.

Denomme next argues there was insufficient evidence to support his convictions based on certain incongruities or peculiarities in the evidence.

Denomme first argues there was insufficient evidence to convict him because the fact that someone attempted to add minutes onto his cell phone does not mean that it was him. Denomme is correct. It is possible someone else attempted to use Lippe's credit card to add minutes onto his cell phone. To convict a defendant, the jury need only be convinced the defendant is guilty beyond a reasonable doubt. A defendant may offer an explanation and a jury may reject that same explanation. The fact a jury rejects the defendant's explanation does not mean the jury's verdict was not supported by sufficient evidence.

Denomme testified at trial he did not steal Lippe's credit card or attempt to purchase cell phone minutes. Thus, Denomme presented his theory to the jury, but as evidenced by its guilty verdicts, the jury made a credibility determination it did not believe Denomme's theory. This court does not reweigh a factfinder's credibility

11

determinations in determining whether a defendant's conviction was supported by sufficient evidence. See *Williams*, 299 Kan. at 525.

Denomme also argues there is insufficient evidence to support his convictions given that he has a cell phone plan with unlimited minutes. It seems Denomme argues he could not have attempted to add minutes onto his cell phone because he had unlimited minutes under his cell phone plan. Again, this assertion turns on the trustworthiness of Denomme's testimony that he had unlimited minutes under his cell phone plan. The jury made a credibility determination Denomme was not telling the truth.

Finally, Denomme argues there was insufficient evidence to support his convictions because he paid his cell phone bill in the amount of $49.92 on July 5, 2013. While Denomme argues it is inconsistent to attempt to add $50.12 worth of minutes onto his cell phone on July 3, 2013, and then pay his cell phone bill in the amount of $49.92 on July 5, 2013, it does not mean there is insufficient evidence to support his convictions. The State presented evidence that a person attempted to use Lippe's credit card to add $50.12 worth of minutes onto Denomme's cell phone. From the evidence presented, a jury could reasonably infer it was Denomme who attempted to add the minutes onto his cell phone regardless of his claim this was inconsistent with the evidence of later payment.

Denomme had an opportunity to present to the jury all the issues he now asserts on appeal as his basis for a claim of insufficient evidence. The jury weighed the evidence and found the evidence implicating Denomme as more credible. For the foregoing reasons, Denomme has failed to establish there was insufficient evidence to support his convictions.

12

Finally, Denomme argues the trial court erred by denying his allegations concerning Yau providing ineffective assistance of counsel. Denomme argues, although his motion for new trial was untimely filed, the trial court should have construed his motion as a motion alleging ineffective assistance of counsel under K.S.A. 60-1507. Denomme also requests this court remand this issue to the trial court for an evidentiary hearing on his allegations of ineffective assistance of counsel. The State responds that this court lacks jurisdiction as the trial court correctly found Denomme's new trial motion was untimely under our Supreme Court's holding in *Holt*.

An appellate court has a duty to examine its jurisdiction. *State v. Tims*, 302 Kan. 536, 540, 355 P.3d 660 (2015). Whether jurisdiction exits is a question of law over which this court has unlimited review. *State v. Looney,* 299 Kan. 903, 906, 327 P.3d 425 (2014).

In *Holt*, our Supreme Court held that "[t]he 14-day time limit set forth in K.S.A. 2012 Supp. 22-3501(1) for motions for new trial based on grounds other than newly discovered evidence is mandatory, not discretionary." 298 Kan. 469, Syl. ¶ 5. This means the trial court may grant a new trial motion only when the motion was timely filed within the 14-day time limit. 298 Kan. 469, Syl. ¶ 5. The *Holt* court further held that mislabeled pro se motions for new trial "may be considered as K.S.A. 60-1507 motions." 298 Kan. 469, Syl. ¶ 7. Nevertheless, in *State v. Reed*, 302 Kan. 227, Syl. ¶ 1, 352 P.3d 530, *cert. denied*, 136 S. Ct. 344 (2015), which was decided after the trial court's ruling in this case, our Supreme Court held that courts have jurisdiction over untimely new trial motions alleging ineffective assistance of counsel.

In *Reed*, our Supreme Court clarified that trial courts and appellate courts have jurisdiction to consider claims of ineffective assistance of counsel raised in untimely

motions for new trial. 302 Kan. 227, Syl. ¶ 1. The *Reed* court held that "a claim of ineffective assistance of counsel is unique" because "[a] district judge's consideration of the merits of such a claim when raised in an untimely motion for new trial does not deprive the district court or the appellate court of jurisdiction." 302 Kan. 227, Syl. ¶ 1. The *Reed* holding applies to every ineffective assistance of counsel claim raised in an untimely motion for new trial regardless of how the trial court treated the motion below. See *State v. Herting*, No. 110,746, 2015 WL 8588057, at *1 (Kan. App. 2015) (unpublished opinion) (where this court originally determined that it lacked jurisdiction to consider Herting's untimely new trial motion alleging that his counsel was ineffective when the trial court treated the motion as a new trial motion and did not hold an evidentiary hearing; yet, based on *Reed*, our Supreme Court remanded Herting's case back to this court to consider the merits because courts have jurisdiction to consider such motions).

Thus, the trial court had jurisdiction and this court has jurisdiction to consider Denomme's ineffective assistance of counsel claims. Moreover, it is worth noting that because he raised his ineffective assistance of counsel arguments while he was in custody, this court continues to have jurisdiction over Denomme's arguments despite the fact he is no longer on probation because the collateral consequences of his convictions prevent his arguments from becoming moot. See *Rawlins v. State*, 39 Kan. App. 2d 666, 673-74, 182 P.3d 1271 (2008).

When a trial court summarily denies a K.S.A. 60-1507 motion, this court exercises de novo review because this court is in as good of a position as the trial court to consider the merits. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014). In this case, the trial court heard testimony from Denomme and Clark, but the trial court did not make any ruling regarding the merits of the ineffective assistance of counsel arguments. Instead, the trial court only considered Denomme's and Clark's testimonies to determine if Denomme was raising newly discovered evidence that would allow it to consider his

14

untimely motion for new trial under K.S.A. 2015 Supp. 22-3501(1). As a result, this court has de novo review because the trial court denied Denomme's motion without reviewing its merits.

Under K.S.A. 60-1507(b), trial courts are required to hold an evidentiary hearing on a prisoner's claim of ineffective assistance of counsel "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." See Supreme Court Rule 183(f) and (j) (2015 Kan. Ct. R. Annot. 271). Defendants have the burden of establishing their K.S.A. 60-1507 motion warrants an evidentiary hearing. *Sola-Morales*, 300 Kan. at 881. To prove deficient performance, defendants must establish: (1) that counsel's performance was deficient under the totality of the circumstances; and (2) that counsel's deficient performance resulted in prejudice. 300 Kan. at 882.

Here, Denomme argues Yau was ineffective because: (1) he failed to communicate with him; (2) he failed to call or subpoena certain witnesses; (3) he failed to thoroughly investigate his case; and (4) he failed to inform the judge about the improper communications between Officer Squires, Tisdale, and the jury. Denomme argues that Yau's failures denied him of his right to a fair trial. Accordingly, Denomme asks this court to remand to the trial court for an evidentiary hearing on his arguments. Denomme's first three arguments fail.

First, outside of alleging Yau failed to communicate with him, Denomme has provided this court with no further information concerning this allegation. Moreover, Denomme never explained how Yau's alleged failure to communicate with him resulted in prejudice. To be entitled to a hearing on their K.S.A. 60-1507 motion, defendants "'must make more than conclusory contentions and must state an evidentiary basis in support of the claims or an evidentiary basis must appear in the record.'" 300 Kan. at 881

15

(quoting *Holmes v. State,* 292 Kan. 271, 274, 252 P.3d 573 [2011]). Because Denomme's argument concerning communication is conclusory, this argument fails.

Second, although Denomme now argues his defense would have benefited from the testimony of a witness from his cell phone service provider or the company that allegedly told him his identity had been stolen, he made no such argument below. Instead, Denomme argued to the trial court Yau failed to subpoena or call unnamed witnesses without further explanation. Thus, Denomme is not entitled to relief on this argument because his arguments below were conclusory. Additionally, Denomme is not entitled to relief based on his argument regarding specific witnesses' testimony because he is arguing it for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014) (holding that generally issues not raised below cannot be raised for the first time on appeal).

Third, regarding Yau's alleged failure to investigate his case, Denomme cannot ultimately establish prejudice. Denomme asserts Yau failed to investigate his allegation he was actually the victim of identity theft. In his brief, Denomme argues that if Yau had better investigated this allegation and presented evidence of the identity theft at trial, this evidence would have corroborated his argument that he was innocent. Denomme argues Yau should have further pursued the "incongruities in the evidence," *i.e.*, the fact someone tried to add minutes onto his cell phone even though he has an unlimited plan, and the fact that he paid a cell phone bill for a different amount 2 days after he allegedly attempted to add minutes on his cell phone. It seems Denomme believes that evidence of the identity theft would have reinforced these incongruities in the evidence.

To ultimately prevail on this claim, however, Denomme must prove not only that Yau's failures constituted deficient performance but also this deficient performance resulted in prejudice. See *Sola-Morales*, 300 Kan. at 885. As previously detailed, the evidence in this case was sufficient to support Denomme's convictions. Through

16

Denomme's testimony, the jury heard evidence he had an unlimited cell phone minutes plan and that he paid his cell phone bill in the amount of $49.92 on July 5, 2013. More importantly, although it was admitted through Officer Squires' testimony, the jury learned Denomme reported he was a victim of identity theft. Consequently, the jury knew about the incongruities in the evidence and knew Denomme reported that his identity had been stolen, but the jury determined this evidence was not credible. As a result, regardless of whether Yau conducted a sufficient investigation, the record shows that Denomme cannot establish prejudice because the jury considered but rejected all the evidence at issue.

It is important to point out the evidence that Denomme was a victim of identity theft did not overwhelmingly support his claim of innocence. Denomme reported he was the victim of identity theft only *after* he had been arrested and nearly 1 year after the identity theft allegedly occurred. Thus, while this evidence marginally supports Denomme's defense it is not so strong that it clearly establishes he was somehow prejudiced.

Finally, Denomme alleges Yau refused to inform the trial court about Officer Squires' and Tisdale's contact with jury members despite his insistence to do so.

Juror misconduct requires a mistrial when the misconduct substantially prejudices a defendant's defense. *State v. Wheaton*, 240 Kan. 345, 353-54, 729 P.2d 1183 (1986), *abrogated on other grounds by State v. Carr*, 300 Kan. 1, 331 P.3d 544 (2014), *rev'd and remanded*, ___ U.S. ___, 136 S. Ct. 633, 193 L. Ed. 2d 535 (2016). Our Supreme Court has explained that "[j]uror misconduct includes communications with jurors from outsiders, witnesses, bailiffs, or judges." *Wheaton*, 240 Kan. at 354. Accordingly, any conversation between Officer Squires, who was a witness, and jury members constituted jury misconduct. Additionally, any conversation between Tisdale, who was an outsider involved in the investigation of Denomme's case, and jury members constituted jury misconduct.

17

Certainly, an attorney's failure to inform the trial court about potential jury misconduct is highly problematic. By failing to take such action, an attorney endangers his or her client's right to a fair trial because the trial court cannot conduct an investigation to determine if the alleged communications were harmless or so inappropriate as to require a mistrial. Thus, if Yau failed to inform the trial court about the alleged improper communications, as Denomme asserts, he unquestionably provided deficient performance that may have resulted in prejudice.

At this stage, the fact Denomme could not hear the conversations between Officer Squires and the jury and Tisdale and the jury is irrelevant. Yau's alleged failure to inform the trial court of the improper conversations, in and of itself, presents a substantial issue that is not conclusively disproven by the motions, files, and records of this case. Additionally, the opportunity for a full evidentiary hearing on this issue would allow Denomme to call witnesses, like Officer Squires and Tisdale, to determine what, if anything, was said during the alleged conversations with the jury. In turn, the court could definitively determine if the alleged statements prejudiced Denomme to the point he did not receive a fair trial. Consequently, Denomme's final argument cannot be dismissed without a hearing to determine: (1) if Yau ignored information concerning jury misconduct; and (2) if ignoring this information resulted in prejudice.

Denomme's first three arguments concerning ineffective assistance of counsel fail. However, his claim of ineffective assistance of counsel based on the failure of his attorney to report jury misconduct requires further proceedings to determine if such misconduct occurred and whether Denomme was prejudiced as a result of such a failure on the part of his counsel.

Affirmed in part, reversed in part, and remanded with directions.

18